[Sac. No. 1245.   Department One.—February 12, 1906.]

## LUCIEN   B.   REYMOND, Appellant,   v.   CELESTIN LABOUDIGUE, Respondent.

SPECIFIC PERFORMANCE—UNCERTAINTY AS TO PRICE OF LAND—INSUF-
FICIENT TENDER OF PERFORMANCE.—A specific performance will not
be decreed where there is an uncertainty as to the price of the
land, or where, in the light of the surrounding circumstances, the
plaintiff has failed to pay or tender the full amount which under
the more fair and reasonable construction of the contract he was
compelled to pay before being entitled to a conveyance.

APPEAL from a judgment of Superior Court of Shasta
County.   Charles M. Head, Judge.

The facts are stated in the opinion of the court.

Reid, Dozier & Carr, for Appellant.

Tillotson & Sessions, and Bush & Perry, for Respondents.

ANGELLOTTI, J.—This is an appeal from a judgment
rendered in favor of defendant upon the sustaining of his
demurrer to plaintiff's second amended complaint, plaintiff
declining to further amend.

Disregarding the objections of uncertainty made by the

demurrer, the sole question for determination, as stated by counsel for plaintiff, is· as to whether the complaint states facts sufficient to constitute a cause of action for specific performance of an agreement to convey real estate.  The complaint shows that the only written evidences of any such agreement were two papers, executed and delivered by defendant on July 20, 1901, which were as follows, viz.:—

(1) "250.00. FRENCH GULCH, July 20th, 1901. Six months after date I promise to pay to L. B. Reymond the sum of $250.00 hundred dollars after the first cleanup of firs crushing in gold coin of united states of america with out interest. CELESTIN LABOUDIGUE.  Witness: CHAS. JOSEPH."

(2) "FRENCH GULCH, July 20, 1901.  I the under signed C. Laboudigue agree to L. B. Reymond if i should leave the place before the $250.00 is paid that property is to goo back to L. B. Reymond when he pays the price of the land that he C. Laboudigue bough from the R. R. Company, for the sum of $51 50 fifty-one dolars and fifty cents.  CELESTIN LABOUDIGUE."

It is claimed by plaintiff that these somewhat vague and uncertain writings must be construed in the light of the surrounding circumstances alleged in the complaint, and that when so construed they are sufficiently definite and certain to warrant the relief demanded, which is a decree requiring defendant to convey to plaintiff the southeast quarter of the southeast quarter of section 11, township 33 north, range 7 west, Mount Diablo meridian, situated in Shasta County, California, for the sum of $51.50.

From the complaint the following facts appear, viz.: One Joseph went into the possession of said land in June, 1901, for the purpose of mining on the same.  Plaintiff purchased an undivided one-half interest from Joseph, and went into possession with him.  The land then belonged to the Central Pacific Railway Company.  Between June 12, 1901, and July 20, 1901, Joseph and the plaintiff did mining work thereon, running a tunnel of about thirty-six feet, and sinking a shaft of about twelve feet, the plaintiff's share of the expense being $48.30.  In July, 1901, they made an application to the railway company for the purchase of said land, and were informed by the land agent of the company that they might purchase it for one hundred dollars and three dollars ad-

ditional for the deed. On July 20, 1901, while they were preparing to purchase the land, plaintiff orally agreed with defendant to sell him his interest in the land for two hundred and fifty dollars, and the further sum of $48.30 (the amount already expended by plaintiff), and also to loan him and Joseph the necessary one hundred dollars to pay the railway company for the land, and it was agreed that the deed from the company should be made to the defendant and Joseph as grantees. The amount of one hundred dollars was advanced by plaintiff, and the deed of the company made to the defendant and Joseph. Defendant entered into possession of said property with Joseph. On August 10, 1901, he paid to plaintiff the said $48.30 part of the purchase price. At or about the same time he and Joseph repaid to plaintiff the one hundred dollars advanced. No part of the two hundred and fifty dollars has ever been paid. Within three and one-half months of July 20, 1901, defendant left said land and has ever since remained away therefrom, and has done no work thereon. It does not appear that defendant ever did any mining work on said land. On May 23, 1902, plaintiff tendered to defendant $51.50, and demanded from him a conveyance of said land, but defendant refused to accept said $51.50 or execute said deed.

Disregarding all other points made by defendant, it appears very clear to us, in the light of the surrounding circumstances alleged, either that the written contract is too indefinite and uncertain in the material matter of the amount to be paid by plaintiff to defendant, as a condition precedent to his right to a conveyance, to warrant a decree of specific performance, or that plaintiff has failed to pay or offer to pay to defendant the full amount which, under the contract, he was compelled to pay, before being entitled to a conveyance. Under the writing relied on, plaintiff is entitled to the property only "when he pays the price of the land." What is meant by the phrase "price of the land"? The words following that phrase,—viz., "That he . . . bought from the R. R. Company, for the sum of $51.50 fifty-one dolars and fifty cents,"—appear to be simply words of description to identify the land referred to. At any rate, they may reasonably be so construed, and the surrounding circumstances alleged lend force to such construction. The "price" paid

by defendant for the land was not only the $51.50 paid to the railway company, but also the $48.30 paid to plaintiff, together with his promise to pay the $250 referred to in the writing. We cannot say that the writing does not mean that the plaintiff should take back the land only on paying to defendant all of the amounts that had in fact been paid by defendant therefor, both the full amount actually paid to plaintiff and the amount paid to the railway company. This would certainly be a more fair and more reasonable contract than one that would require defendant to forfeit all amounts actually paid to plaintiff, in the event that he abandoned the place only after he had paid all except a small portion of the two hundred and fifty dollars, which would be the contract if plaintiff's construction be the correct one. If this is the proper construction of the agreement, plaintiff was not entitled to any relief in this action, for he had offered to pay to defendant only $51.50, and was therefore not entitled to receive a conveyance. It is of course not disputed that the general rule is that a party is not entitled to specific performance until he has performed, or offered to perform, all conditions precedent on his part, required by the terms of the contract.

If, on the other hand, it be uncertain whether or not this is the proper construction of the agreement, plaintiff must fail altogether in his effort to obtain specific performance. It is elementary that specific performance will not be enforced unless the contract not only contains all the material terms, but also expresses each in a sufficiently definite manner. In Pomeroy on Contracts (sec. 159) it is said: "An uncertain contract . . . may perhaps embrace, in a partial manner, all the material terms, but on account of the inexact, indefinite, or obscure language in which one or more of them is stated, it fails to express the intent of the parties with sufficient clearness to enable a court of equity to enforce its provisions. The specific performance of an agreement, thus uncertain, will not be decreed." As said in 26 American and English Encyclopædia of Law (2d ed., p. 33), "The contract sought to be enforced must, at all events, be so certain that its meaning can be ascertained, as an indefinite contract cannot be enforced, because the courts do not know what the parties agreed. The meaning and intent of the parties should

be placed beyond the bounds of mere conjecture by full and clear proof.'' We are satisfied that we would not be warranted in holding that the agreement clearly and definitely shows that the plaintiff was to be entitled to a conveyance upon the payment to defendant of the sum of $51.50 only.

Our conclusion upon this point makes it unnecessary to consider any of the other points made in support of the judgment.

The judgment is affirmed.

Shaw, J., and McFarland, J., concurred.